**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA      :

                          :

     v.                    :  **CRIMINAL NO. 25-cr-231**

                          :

**CHRISTOPHER MURPHY,**     :
**Defendant.**               :

*has the be felt
Ryan C. Tooloth
U.S.D.J.
3/16/26*

## STATEMENT OF OFFENSE

The parties in this case, the United States of America and the defendant, Christopher Murphy, stipulate and agree that the following facts are true and accurate. These facts do not constitute all of the facts known to the parties concerning the charged offenses; they are being submitted to demonstrate that sufficient facts exist that the defendant committed the offenses to which the defendant is pleading guilty.

### I.     The Penalties

A violation of 18 U.S.C. § 2252(a)(2) carries a mandatory minimum sentence of 5 years imprisonment and a maximum sentence of 20 years incarceration; a fine of $250,000 or twice the pecuniary gain or loss of the offense, pursuant to 18 U.S.C. § 3571(3); a term of supervised release of not less than 5 years and up to life, pursuant to 18 U.S.C. § 3583(k); mandatory restitution under 18 U.S.C. § 3663A; and an obligation to pay any applicable interest or penalties on fines and restitution not timely made.

### II.     The Elements of the Offense

To prove that the defendant is guilty of Distribution of Child Pornography, in violation of 18 U.S.C. § 2252(a)(2), the government must prove beyond a reasonable doubt that:

1

(1) The defendant knowingly distributes, using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means including by computer or mails, a visual depiction;

(2) The defendant knew that the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and

(3) The visual depiction is of such conduct.

## Statement of Facts

On various occasions, the Christpoher Murphy (MURPHY or Defendant) used two encrypted messaging applications – Signal and Telegram – to distribute and to receive child sexual abuse material ("CSAM"). As further detailed below, in addition to his receipt and distribution of CSAM, the Defendant was a member of several Signal groups that were primarily used for the sharing of CSAM. MURPHY also hosted and attended Zoom video meetings, or "rooms," to connect with other "pedos" and view and exchange CSAM.

MURPHY operated the Signal account, "Otter Cloud" and previously operated the Signal account "Chris X." On January 25, 2025, using Signal, MURPHY asked an individual (USER 1), a resident of D.C., if there were "any perv groups rn." In response, USER 1 sent a link to a Zoom meeting. On January 29, 2025, again using Signal, MURPHY provided USER 1 with his Telegram handle, "@StrokeTheOtter." On February 2, 2025, USER 1 reached out to the Defendant on Telegram, providing his own Signal and Zoom usernames as a means of identification.

Using Telegram, MURPHY not only distributed CSAM but also engaged in multiple discussions between February 2025 and June 2025 with USER 1 regarding his collection of porn, "pedos," and joining Zoom "rooms." On February 27, 2025, for example, the Defendant asked

USER 1 if he was "[u]p to any misbehaving?" After accepting an invitation to join a "room" USER 1 was hosting, the Defendant said his "usual" Zoom account had been deactivated after the last time he had hosted a "room" and later thanked USER 1 for hosting a "fun room." The next day, on February 28, 2025, the Defendant told USER 1 that he was in a "small room" with "just 4 pedos." Several hours later, the Defendant told USER 1 that he was "hosting" a room and that USER 1 should join. Similarly, on March 3, 2025, the Defendant asked USER 1 if he was at work and told him that he was again running a "room." When USER 1 asked for the Defendant's Zoom screen name and told him that he was trying to "remember everyone," MURPHY sent several sexually explicit photographs, as well as a photograph of his face. MURPHY set up and joined Zoom rooms with the explicit purpose of watching CSAM with other individuals, including with USER 1.

On March 4, 2025, the Defendant told USER 1 that he was "working on a porn collecting/organizing project" and asked USER 1 if he was "chatting or watching see-pee" (a reference to child pornography). After USER 1 replied "[b]oth," the Defendant asked if he could join and USER 1 sent a link to a Zoom meeting. In multiple subsequent conversations, the Defendant again discussed joining and hosting Zoom groups, as well as issues with Zoom due to the "1132 nonsense." (Of note, Zoom error code 1132 is associated with a user's temporary ban for violating community standards.) Despite these violations, MURPHY persisted in hosting and attending Zoom rooms for the purpose of viewing CSAM.

On Telegram, between March 22-23, 2025, the Defendant sent several videos, including two depicting CSAM, to USER 1. Specifically, on March 22, 2025, the Defendant sent a video of an adult male licking the anus of what appears to be a prepubescent boy's nude and exposed anus and scrotum. On March 23, 2025, the Defendant sent another CSAM video, which was labeled,

3

"DAD SLAM HIS 13 YEARS OLD SON," and showed what appears to be a pubescent boy being injected in the arm with an unknown substance followed by additional injections in the boy's anus before the boy's mouth and anus are penetrated by an adult male's erect penis. On April 12, 2025, the Defendant told USER 1 that despite "obsessively" trying to repair his hard drive, he ultimately lost all of his "sCPecial" content. Using Telegram, the Defendant continued to engage in similar discussions with USER 1 until June 2025.

In addition to his distribution of CSAM on Telegram, MURPHY also distributed CSAM through Signal. Specifically, on June 7, 2025, the Defendant asked USER 1 if he had a specific "reaction" video. The Defendant then provided a graphic description of the video, saying that it included a "[h]ot pedo" and a "vid of Dylan and his two dads." After USER 1 indicated that he knew which video the Defendant was referencing but did not have it, the Defendant subsequently said that he was "rebuilding" his collection and discussed methods of storing his content, as seen in Figures A-B below:



*Figure A: June 7, 2025, Signal messages between the MURPHY and USER 1*

4



*Figure B: June 9, 2025, Signal messages between the Defendant and SUBJECT 1*

During this time frame, between June 8 and June 14, 2025, the Defendant used Signal both to distribute CSAM to USER 1, as well as to receive CSAM. Specifically, on June 8, 2025, shortly after the Defendant advised that he was rebuilding his collection, USER 1 sent fifteen videos of adult males recording themselves masturbating while watching videos on other devices of CSAM, including videos of an adult male penetrating the anus of an infant male. The Defendant acknowledged receipt by saying, "F[***], thank you!! My hero!"

On June 11, 2025, MURPHY sent USER 1 a CSAM video depicting an adult male's penis penetrating the anus of what appears to be a prepubescent boy, which ends with the adult male ejaculating inside of the boy's anus. On June 14, 2025, MURPHY sent USER 1 two additional CSAM videos, each comprised of numerous clips depicting adult males masturbating while watching CSAM, which included videos depicting adult males' erect penises penetrating the mouths and anuses of both infant and toddler age males.

5

In July 2025, after the arrest of USER 1 and recovery of his messages with the Defendant, the UC contacted the Defendant using USER 1's Signal account, where the Defendant informed the UC that he lived in Phoenix. The UC also contacted the Defendant using a UC Telegram account, indicating that he found the Defendant through USER 1. After the UC told the Defendant that he was a "dad," the Defendant said, "[s]o you've got real experience…or at least a real shot at real experience…." The Defendant later said that he no longer shared files virtually due to the risk but did a "fair amount of screen sharing live" and talked about having had to rebuild his "special porn" collection four times.

MURPHY possessed thousands of videos and images of CSAM, including numerous videos of toddler and infant CSAM involving penetration and CSAM involving pre-pubescent children who are being penetrated by adults, and which involve bondage of pre-pubescent children.

MURPHY acknowledges that he has no legal defense or justification for distributing, receiving, or possessing videos and images depicting child sexual abuse materials. MURPHY's distribution, receipt, and possession of CSAM was voluntary and not by mistake or accident.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY


_____/s/ Richard S. Kelley_____
Richard S. Kelley
Assistant United States Attorney

DEFENDANT'S ACKNOWLEDGMENT

I have read this Statement of Offense and have discussed it with my attorney. I fully understand this Statement of Offense. I agree and acknowledge by my signature that this Statement of Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of Offense fully.

Date: 3/16/26

Christopher Murphy
The Defendant

ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of Offense, and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of Offense as true and accurate.

Date: 3/16/26

Barry Pollack
Attorney for the Defendant

7